COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, O'Brien and AtLee
Argued by videoconference


ALONZO ELLIS MARSHALL, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0466-20-1              JUDGE RICHARD Y. ATLEE, JR.
                                                    MARCH 9, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Erik A. Mussoni, Assistant Public Defender (Lucille M. Wall,
Assistant Public Defender, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Alonzo Ellis Marshall, Jr. appeals his convictions for attempted breaking and entering

and use of a firearm while attempting to break and enter. He argues that the evidence was

insufficient to sustain his convictions. Specifically, he argues that the evidence was insufficient

to prove he had an intent to commit larceny. We disagree and affirm his convictions.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)).

On December 21, 2018, Randy Culpepper was working as the store manager at a Dollar

Tree in Chesapeake, Virginia. Culpepper, along with two cashiers and Dottie Stevens, a

--------

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"recovery person" in charge of cleaning the store, were closing the store at the end of the night. Shortly after locking the doors at 10:00 p.m., Culpepper heard someone trying to open the doors.

Culpepper testified that he saw a man wearing a backpack and black puffy jacket, later identified as Marshall, grab the doors of the Dollar Tree with both hands and "forcibly" shake them multiple times. Culpepper, then about fifteen feet away, told him the store was closed. Marshall did not respond, but he did smirk at Culpepper in an "unsettling" manner. Culpepper testified that it was not a normal reaction to being told the store was closed.

Marshall then walked past the storefront windows, moving from Culpepper's left to his right. As Marshall walked away, Culpepper could see through the windows that Marshall had a black handgun in his left hand. Culpepper had moved about five to ten feet closer to the front of the store. He saw the barrel of the gun, and Marshall's hand on the grip. Marshall's arm was straight and pointed downward and out to the side, about twelve inches from his body. Culpepper testified that he was able to see the gun for approximately three to four seconds. Culpepper had not seen the gun when Marshall was shaking the doors, but he explained that his attention was not on Marshall's hands. Stevens observed Marshall shake the doors and walk off to the side of the store, but she testified that she was not in a position to see anything in Marshall's hands.

Once past the storefront, Culpepper noticed that Marshall had stopped and turned, and it appeared he had placed his back up against the wall. When he saw the handgun, Culpepper told his associates to move to the back of the store. He informed them that they would not be leaving until Marshall was gone. He then called the police, and they waited inside for about fifteen minutes before the police arrived.

Officer Kenneth Smith, with the Chesapeake Police Department, responded to the call less than a minute after receiving it. Officer Smith immediately noticed a man with a flowered

- 2 -

backpack, who matched the description given, standing on the median separating the Dollar Tree parking lot from the road. As Officer Smith approached, he noticed that Marshall appeared to be loading the magazine of a firearm. Officer Smith identified himself, explained why he was making contact, and told Marshall that he was going to conduct a pat down. Marshall told Officer Smith that Smith was not going to search him or his backpack. Officer Smith testified at trial that Marshall started to take a couple of steps back.

As Officer Smith moved to conduct the pat down, Marshall admitted he had a gun and reached into his pocket, which led Officer Smith to draw his weapon. Marshall pulled out what turned out to be a BB gun. Officer Smith ordered Marshall to drop the gun. After repeated requests, Marshall dropped the gun.

Officer Smith informed Marshall that he was still going to do a pat down. Marshall became angry and struggled with the officer. Officer Smith ultimately prevailed and placed Marshall in handcuffs. When he was finally subdued, Marshall informed the officer that he also had a weapon in his backpack. During the search, Officer Smith discovered a .380 semiautomatic handgun, with one round in the chamber and five rounds in the magazine.

At trial, Marshall testified in his own defense. He admitted that he walked past the Dollar Tree on the way to his hotel that night, but he denied ever shaking the doors of the store. He also denied that he smirked or saw the store manager. Marshall testified that he did not see the sign stating the store hours, but he did know the store closed "at like 9:00 [or] 9:30." He admitted that he had a BB gun in his pocket and the gun in his backpack, but he denied ever having either in his hand. Instead, he claimed that he was holding the BB gun magazine in his hand. Marshall also denied that he fought with Officer Smith.

Marshall made a motion to strike the evidence. He argued that the evidence was insufficient to establish that he had "an intent to break into the Dollar Tree with the intent to

commit any kind of crime therein." He then argued that if the trial court granted the motion on the attempted breaking and entering, then it would have to grant the motion in regard to use of a firearm "because that charge is part and parcel with the charge of attempted breaking and entering."

The trial court denied the motion. The trial court found Culpepper's and Stevens' testimony more credible than Marshall's, noting Marshall's outright denials should not be given credence in light of Culpepper's and Stevens' unequivocal identification of Marshall and description of his actions. Additionally, Marshall's admission that he knew the store closed around 9:00 or 9:30 p.m. was particularly relevant as it allowed the trial court to infer an unlawful purpose when Marshall attempted to enter the store after 10:00 p.m. Given the surrounding circumstances, the trial court found Marshall guilty of both charges. Marshall now appeals to this Court.

## II. ANALYSIS

### A. *Standard of Review*

Marshall argues that the evidence is insufficient to support his convictions. "When the sufficiency of the evidence is challenged on appeal, we must '"examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it."'" Austin v. Commonwealth, 60 Va. App. 60, 65 (2012) (quoting Commonwealth v. McNeal, 282 Va. 16, 20 (2011)). We review the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial," Gerald, 295 Va. at 472, and we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Reid v. Commonwealth, 65 Va. App. 745, 753 (2016) (quoting Ervin v. Commonwealth, 57 Va. App. 495, 502 (2011)). "If there is evidence to support the

conviction, we may not substitute our judgment, even if our conclusions of fact differ from the conclusions reached by the fact-finder at trial." Austin, 60 Va. App. at 65-66.

B. *Attempted Break and Enter*

Marshall argues that the evidence failed to prove that he had the intent to break into and enter the Dollar Tree to commit a larceny. He also challenges the credibility of Culpepper's and Stevens' testimony against him.

"An attempt . . . is an unfinished crime and is composed of two elements, the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design." Velez-Suarez v. Commonwealth, 64 Va. App. 269, 277-78 (2015) (quoting Rodgers v. Commonwealth, 55 Va. App. 20, 24-25 (2009)). "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." Cuffee v. Commonwealth, 61 Va. App. 353, 369 (2013) (quoting Wynn v. Commonwealth, 5 Va. App. 283, 292 (1987)).

"A defendant's intent, due to its very nature, 'may, and often must, be inferred from the facts and circumstances in [the] particular case,'" Parham v. Commonwealth, 64 Va. App. 560, 566 (2015) (alteration in original) (quoting Ridley v. Commonwealth, 219 Va. 834, 836 (1979)), "including a person's conduct and statements," Roberston v. Commonwealth, 31 Va. App. 814, 820 (2000). "Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." Towler v. Commonwealth, 59 Va. App. 284, 297 (2011).

Marshall admitted at trial that he knew the Dollar Tree closed at 9:00 or 9:30 p.m. and that it was after 10:00 p.m. when he was at the store. From this fact, the trial court found that if Marshall "knew the store was closed, the [trial c]ourt could and does infer that he attempted an unlawful entry from all the surrounding facts and circumstances on that date." Our deference to

the fact-finder "applies not only to the findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Turner v. Commonwealth, 65 Va. App. 312, 331 (2015) (quoting Sullivan v. Commonwealth, 280 Va. 672, 676 (2010)).

Additionally, two witnesses, both of whom unequivocally identified Marshall, saw him "forcibly" shake the locked doors with two hands multiple times. When the store manager informed Marshall the store was closed, Marshall smirked in an unsettling way without replying. Furthermore, he had a firearm in one hand and appeared to back up against the side of the building after walking past the glass storefront. And as Officer Smith approached Marshall when responding to the call only a minute after the call, he observed Marshall attempting to load the magazine of a firearm. Given the trial court's inference that Marshall attempted an unlawful entry, his possession of a firearm, his unsettling response to being told the store was closed, and his other actions, a rational trier of fact could conclude that Marshall intended to enter the store to commit larceny.

Marshall challenges the evidence offered by Culpepper and Stevens, arguing that the "credibility of the . . . witnesses was unreliable," particularly the witnesses' identification of Marshall and whether Culpepper saw a firearm. "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." Commonwealth v. Perkins, 295 Va. 323, 328 (2018) (quoting Elliott v. Commonwealth, 277 Va. 457, 462 (2009)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998)). Here, the trial court made a specific finding that Culpepper's and Stevens' testimony was more reliable than Marshall's testimony. Both testified they were able to view Marshall

through the window. Culpepper initially saw him from ten to fifteen feet away, and then, at some point, he moved closer and observed him from five to ten feet away. There is nothing in the record to suggest Culpepper's and Stevens' testimony was unreliable or inherently incredible. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that Marshall had the requisite intent.

### C. *Use of a Firearm Charge*

Marshall also argues that the evidence was insufficient to prove that he used a firearm while attempting to break and enter the Dollar Tree store.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Under the rule, "a specific argument must be made to the trial court at the appropriate time, or allegation of error will not be considered on appeal." Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*).

In his brief to this Court, Marshall argued that the evidence was insufficient for two reasons: (1) Culpepper's testimony was insufficient to prove he used a firearm, especially in light of Marshall's testimony that he had a magazine from the BB gun in his hand, and (2) that the use of a firearm charge fails because the Commonwealth failed to prove the predicate offense of attempted breaking and entering. In the court below, however, Marshall argued only that the use of a firearm charge must fail because the evidence was insufficient to prove the predicate offense. Nothing in his argument below alerted the trial court to his other argument before this Court.[1] "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Id. Accordingly, Marshall's first argument, that the evidence was

---

[1] Marshall's only argument below relating to the firearm and how it was used addressed whether Marshall had an intent to commit a crime.

insufficient to prove that he used the firearm, is not preserved, and we will not consider it on appeal.

Unlike the previous argument, Marshall's second contention, that the use of a firearm charge fails if the evidence was not sufficient to support his attempted breaking and entering charge, *was* properly preserved.  Nevertheless, it fails, because, as explained above, we find the evidence sufficient to prove the predicate offense of attempted breaking and entering.  Therefore, Marshall's conviction for use of a firearm stands.

### III. CONCLUSION

Because the evidence was sufficient to support both of Marshall's convictions, we affirm the decision of the trial court.

<u>Affirmed.</u>