COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia

UNPUBLISHED

KWAKU OTI ACHEAMPONG

MEMORANDUM OPINION* BY
v.      Record No. 1166-21-1          JUDGE CLIFFORD L. ATHEY, JR.
                                      JUNE 21, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Kwaku Oti Acheampong ("Acheampong") was convicted of

malicious wounding, in violation of Code § 18.2-51, and sentenced to five years of incarceration

with one year suspended. On appeal, Acheampong contends that the evidence in support of his

conviction was insufficient to prove malice. For the following reasons, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so,

we discard any of Acheampong's conflicting evidence, and regard as true all credible evidence

favorable to the Commonwealth and all inferences that may reasonably be drawn from that

evidence. *Id.* at 473.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the morning of May 5, 2020, Acheampong boarded a bus while holding a bag. Muhammad Ali ("Ali") subsequently boarded the same bus to go to work. Ali sat in the middle of the bus, by a door, and began listening to his audiobook. Ali then "heard some noise" and realized that he had been struck on the right side of his head. Ali looked to his right, and Acheampong struck him on the head again with a wine bottle, causing Ali's head to begin bleeding. Ali watched Acheampong walk back to his seat and put the wine bottle back in his bag. Ali subsequently required six stitches to close the deep cut on his forehead.

At trial, Ali testified that he had seen Acheampong "a couple of times at the place [he] worked," but had never had any problems with Acheampong in the past and did not know why Acheampong attacked him.

The bus driver called 911 to report the unprovoked attack, and the police took Acheampong into custody shortly after their arrival. Acheampong attempted to justify the attack by voluntarily telling the police that he previously had trouble with Ali at a 7-Eleven store in Virginia Beach. Acheampong also admitted that when he noticed Ali on the bus, he "took the bottle and struck [Ali] in the head" the first time and gave Ali "a chance to defend himself," but when Ali didn't defend himself and was not bleeding after the initial blow, he "struck a second time."

At trial, the Commonwealth admitted security video footage from the bus into evidence which showed Acheampong approaching Ali from behind and striking him in the head. Acheampong then briefly paused before striking Ali a second time with the wine bottle and then returning to his seat while Ali was holding his head with blood running down his face.

At the close of the Commonwealth's evidence, Acheampong moved to strike, arguing that the Commonwealth's evidence was insufficient to prove malice. The trial court denied the motion, finding that malice could be inferred from the security video footage that reflected "an unprovoked

attack." The trial court also cited as evidence of malice Acheampong's decision to strike Ali a second time when his first blow had not drawn blood and Ali failed to retaliate.

Acheampong then testified that in 2015, he had come into contact with Ali who was working at a 7-Eleven in Virginia Beach.[1] Acheampong testified that before buying cigarettes, he had removed the cigarettes' wrapper but then decided not to purchase them due to the cost. Acheampong further testified that Ali called the police and that Acheampong was accused of assaulting the officers when they arrived at the scene. Acheampong also accused Ali of testifying against him at the ensuing trial where he was convicted of public disturbance and then spent two years in prison.[2] Finally, Acheampong testified that when he saw Ali on the bus, "everything came out because he lied on me," but Acheampong insisted that he was not "crazy" and did not "go around hitting people with a bottle."

At the close of all the evidence, Acheampong renewed his motion to strike, contending that the evidence established that his demeanor was "agitated" and "excited." Acheampong stated that his actions were not reflecting a "cruel decision to attack a stranger," but because he thought Ali was the reason for his previous incarceration. Finally, Acheampong argued that unlawful wounding would be more appropriate in the case than malicious wounding.

The trial court denied Acheampong's motion again, stating that this was a case of "transferred malice" based on a misidentification of Ali. The trial court concluded that this mistake did not reduce the charge "from malicious wounding to unlawful wounding." The trial court ultimately held that the evidence established "an intent to disfigure" because "hitting somebody twice with a glass bottle . . . can cause great scarring or the loss of an eye."

---

[1] Ali testified, however, that he had never worked at a 7-Eleven in Virginia Beach.

[2] The Commonwealth introduced into evidence a criminal history report that showed Acheampong was previously convicted of two counts of assault and battery of a law enforcement officer in July 2014.

Acheampong was convicted of malicious wounding and sentenced to five years of incarceration with one year suspended. This appeal followed.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A conviction for malicious wounding under Code § 18.2-51 requires the accused to have acted with malice. Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "[M]alice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)).

- 4 -

"Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Canipe*, 25 Va. App. at 643). "Heat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." *Id.* (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 130 (2016)). It "excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Id.* (quoting *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015)). "Heat of passion requires the simultaneous 'reasonable provocation' by the victim and resulting passion by the defendant, such that the defendant acts 'on impulse without conscious reflection.'" *Williams v. Commonwealth*, 64 Va. App. 240, 252 (2015) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)).

Here, Acheampong does not dispute that he struck Ali or the extent of Ali's injuries. Rather, Acheampong argues that the evidence was not sufficient to support a finding of malice because "his conduct was the product of an enraged mind and not the product of a sedate, deliberate mind acting upon a predesigned plan or thought." However, the evidence, viewed in the light most favorable to the Commonwealth, demonstrates that Acheampong approached and struck Ali with a glass bottle from behind. Acheampong's reaction to seeing Ali was not immediate, as he waited several minutes after Ali boarded the bus to attack him. Significantly, Acheampong struck Ali two separate times and paused between the attacks. Acheampong argues that because there was no cooling down period between the blows, the trial court could not have found deliberation. However, by Acheampong's own words, he intentionally paused after striking Ali the first time, purportedly to give Ali time to defend himself. When Ali did not fight back, Acheampong purposefully and intentionally hit him again.[3] We, therefore, find that the evidence in

---

[3] Based on the totality of the evidence, a rational trier of fact could also find that Acheampong acted under the control of reason along with anger and revenge. *See Watson-Scott*, 298 Va. at 256.

- 5 -

this case was competent, credible, and sufficient to support the trial court's finding that Acheampong acted maliciously in striking Ali twice in the head with a wine bottle. Thus, the trial court did not err, and the conviction stands.

CONCLUSION

For these reasons, we affirm the decision of the trial court.

*Affirmed.*